THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SLOAN STANLEY, *et al.*,

                    Plaintiffs,

        v.

KING COUNTY, *et al.*,

                    Defendants.

CASE NO. C24-0108-JCC

ORDER

        This matter comes before the Court on motions to dismiss by Defendants King County and Gary M. Ernsdorff ("County Defendants") (Dkt. No. 16) and Defendants City of Seattle, Rande Christiansen, Nicholas Meyst, and Jason Stolt ("City Defendants") (Dkt. No. 17). Having thoroughly considered the briefing and the relevant record, the Court hereby GRANTS the motions, in part, as described below.

## I.    BACKGROUND

        The complaint in this matter is, frankly, convoluted; it lacks the rigor in pleading the Court is accustomed to for represented parties. Nevertheless, the Court attempts to discern the basis for Plaintiffs' claims. The case arises out of Sloan Stanley's allegedly wrongful arrest and conviction. (*See generally* Dkt. No. 1.) Jacinta Stanley, Mr. Stanley's mother, joins solely based on her deprivation of familial rights. (*See id.* at 18.)

        According to the complaint, Seattle Police Detective Rande Christiansen and King

County Prosecuting Attorney Gary Ernsdorff prepared a probable cause certificate accusing Mr. Stanley of making verbal threats amounting to felony harassment. (*Id.* at 3.) The two learned of these threats from a prison informant, Randy Burleson, who was incarcerated with Mr. Stanley at the time for an unrelated crime. (*Id.*) To corroborate Mr. Burleson's claim, Detective Christiansen and Prosecuting Attorney Ernsdorff "planned to insert a listening device in Mr. Stanley's cell along with a second snitch, Temple." (*Id.*) Plaintiffs assert that when "the second snitch denied hearing [Mr.] Stanley issue threats, [Detective] Christiansen and [Prosecuting Attorney] Ernsdorff falsified a certificate of probable cause." (*Id.* at 3–4.) "[T]he falsification aspects are too numerous to set forth fully" but include, among other things, the failure to fully disclose the informants' criminal histories, Prosecuting Attorney Ernsdorff's "lawyerly manipulation of words, giv[ing] the false impression that the two snitches corroborated one another," and the false claim that "the first snitch asked for nothing in return for cooperating." (*Id.* at 4–5.)

Mr. Stanley was tried for the resulting crimes before a jury in Walla Walla Superior Court, following a change in venue. (*Id.* at 4.) And according to the complaint, Prosecuting Attorney Ernsdorff "convinced the jury to find Mr. Stanley guilty despite lacking probable cause." (*Id.* at 6.) Following the jury conviction, the Walla Walla Superior Court sentenced Mr. Stanley to exceptional consecutive terms, resulting in a total sentence of 402 months. (*Id.* at 5.) The Washington State Court of Appeals reversed and remanded. *See State v. Stanley*, 2021 WL 2910249 (Wash. Ct. App. 2021). Prosecuting Attorney Ernsdorff then dismissed the charges because, according to the complaint, "the case was built on false statements, nobody corroborated the false statements, and nobody ever could in the future, given that they were false." (*Id.*) Nonetheless, by the time of his release, Mr. Stanley served nearly six years in prison on the charges. (*Id.* at 12.)

In January 2024, Plaintiffs filed the instant action alleging civil rights violations pursuant to 42 U.S.C. § 1983 against the City of Seattle, Detective Christiansen, fellow Seattle Police

1  Detectives Jason Stolt, and Nicholas Meyst[1], King County, and Prosecuting Attorney Ernsdorff.

2  (*See generally id.*) They also brought several state law claims, including malicious

3  prosecution, false arrest and imprisonment, defamation, and violation of the Wrongfully

4  Convicted Persons Act ("WCPA"), RCW 4.100. (*See id.* at 7–24.)

5      Defendants each move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.

6  (*See* Dkt. Nos. 16, 17.)

7  **II.   DISCUSSION**

8      **A.   Legal Standard**

9      On a Rule 12(b)(6) motion, the Court accepts all factual allegations as true and construes

10  them in the light most favorable to the non-moving party. *Vasquez v. L.A. Cnty.*, 487 F.3d 1246,

11  1249 (9th Cir. 2007). However, to survive a motion to dismiss, a plaintiff must cite facts

12  supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56

13  (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content

14  that allows the Court to draw the reasonable inference that the defendant is liable for the

15  misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal quotations omitted).

16  Although the Court must accept as true a complaint's well-pleaded facts, "conclusory allegations

17  of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss."

18  *Vasquez*, 487 F.3d at 1249 (internal quotes omitted). "Dismissal for failure to state a claim is

19  appropriate only if it appears beyond doubt that the non-moving party can prove no set of facts in

20  support of his claim which would entitle him to relief." *Id.* (internal quotes omitted).

21      **B.   Judicial Notice**

22      Plaintiffs ask the Court to take judicial notice of "all court records herein referenced"

23

24

25  [1] According to the complaint, Detectives Stolt and Meyst were integral participants in the
   investigation and knew Mr. Stanley was unlawfully held and prosecuted. (*Id.* at 16–17.)

26

1  pursuant to Federal Rule of Evidence 201. (Dkt. Nos. 18 at 7, 30 at 4.) Generally, courts may

2  take judicial notice of facts that are "not subject to reasonable dispute because [they] . . . can be

3  accurately and readily determined from sources whose accuracy cannot reasonably be

4  questioned." *U.S. v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003) (citing Fed. R. Evid. 201(b)).

5  Judicial notice should be taken with reserve, however, as its function is to deprive a party of the

6  opportunity to attack opposing evidence through rebuttal and cross-examination. *See Rivera v.*

7  *Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005). And here, Plaintiffs' exhibits (Dkt.

8  Nos. 19 *et seq.*, 31 *et seq.*) are not the proper subject of judicial notice as they have not been

9  authenticated; nor have Plaintiffs made any effort to establish how such documents are subject to

10  judicial notice under Rule 201.

11    **C.    Section 1983 Claims**

12      To establish liability in accordance with 42 U.S.C. § 1983, a plaintiff must demonstrate

13  that (1) a defendant acted under color of state law and (2) they deprived the plaintiff of a right

14  secured by the Constitution or laws of the United States. *See Learned v. City of Bellevue*, 860

15  F.2d 928, 933 (9th Cir. 1988).

16      1. *Monell*[2] Claim(s)

17      A plaintiff alleging a § 1983 claim may establish a local government's liability for an

18  agent's act by proving that the agent "committed the alleged constitutional violation pursuant to

19  a formal governmental policy or a longstanding practice or custom which constitutes the

20  'standard operating procedure' of the local governmental entity." *Gillette v. Delmore*, 979 F.2d

21  1342, 1346 (9th Cir. 1992) (internal quotations omitted). Notably, "[p]roof of a single incident of

22  unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the

23  incident includes proof that it was caused by an existing, unconstitutional municipal policy,

24  which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471

25  _____

26  [2] *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

1   U.S. 808, 823–24 (1985).

2      Plaintiffs assert here that, as a policy, practice or custom, King County allows deputy

3   prosecuting attorneys (a) "to draft or assist in the drafting of false certifications of probable cause

4   for police to sign," (b) to "conceal by deception that informants are unqualified and compensated

5   in return for testimony," and (c) to remain "on cases in which recusal would prevent retaliation

6   and the appearance of impropriety." (Dkt. No. 1 at 8, 14–15.) Plaintiffs similarly assert that the

7   City of Seattle allows its law enforcement officers to (a) "communicate nonexistent threats to

8   victims" and (b) "falsify probable cause certifications and investigative reports." (*Id.* at 8–9.) In

9   addition, Plaintiffs assert both municipal entities have policies, practices, or customs ratifying

10  and/or permitting prosecutors or police officers (a) "to retaliate for the exercise of rights inherent

11  in legal advocacy," (b) "exploit an apparently automatic Superior Court rubber-stamping system

12  for finding probable cause," and (c) engage in "prosecutorial retaliation for protected speech and

13  conduct." (*Id.* at 8, 14.)

14     In moving to dismiss, Defendants argue the complaint fails to identify a *specific* custom

15  or practice giving rise to the alleged constitutional violations, nor does it identify *which*

16  government official ratified the alleged misconduct. (*See* Dkt. Nos. 16 at 10–11, 17 at 8–11.) The

17  Court agrees. Indeed, Plaintiffs' specific allegations are limited to the activity relating to Mr.

18  Stanley's arrest and conviction. (*See generally* Dkt. No. 1.) The broader allegations are too

19  general to establish a specific policy, practice, or custom. As such, the complaint is insufficient

20  to establish the existence of *Monell* liability, which requires specific allegations of "practices of

21  sufficient duration, frequency and consistency" to suggest that such "conduct has become a

22  traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

23  Moreover, the complaint similarly fails to plead *which* individual with final policy-making

24  authority ratified the subordinate's allegedly unconstitutional act or decision. This is also

25  required to plead *Monell* liability. *See Gillette*, 979 F.2d at 1346–47.

26     Accordingly, Plaintiffs' *Monell* claims are DISMISSED without prejudice.

1          2.  <u>Claims Against Detective Christiansen</u>

2          Plaintiffs allege that Detective Christiansen collaborated with Prosecuting Attorney

3   Ernsdorff to falsify the probable cause certificate by including material misrepresentations and

4   excluding exculpatory material. (*See* Dkt. No. 1 at 3–4, 10–12.) This, according to Plaintiffs,

5   violated Mr. Stanley's right to be free from arrest, detention, and imprisonment through judicial

6   deception; a violation of his right to a fair trial; and an arrest, prosecution, conviction, and

7   imprisonment by fraudulent means. (*Id.* at 7, 12.) In response, Detective Christiansen points to

8   qualified immunity. (*See* Dkt. No. 17 at 12–15.)

9          "The doctrine of qualified immunity protects government officials 'from liability for civil

10  damages insofar as their conduct does not violate clearly established statutory or constitutional

11  rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223,

12  231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This inquiry has two

13  elements: (1) whether there was a violation of a plaintiff's constitutional rights and (2) whether

14  those rights were clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

15         Here, Plaintiffs fail at the first step. They contend that the relied-upon informants were

16  not credible due to, among other things, their criminal histories and receipt of payments. (Dkt.

17  No. 1 at 10.)[3] But critically, Plaintiffs do not address the information provided by the first

18  informant that *does* contribute to a finding of probable cause. (*See generally id.*); *see Riveira v.*

19  *Dresch*, 2019 WL 3238569, slip op. at 6 (W.D. Wash. 2019). That information includes a

20  certification that Detective Christiansen "verified and checked [that information] with facts from

21  the original case." (Dkt. No. 1 at 27.) Moreover, even if the affidavit was inaccurate, Plaintiffs

22  have not made specific, *non-conclusory* allegations to support the standard, namely that

23  _____

24  [3] This is controverted by the marked-up probable cause certification Plaintiffs incorporated into

25  their complaint, which acknowledges that the first informant had "been in and out of prisons
    multiple times." (*Id.* at 27.)

26

ORDER
C24-0108-JCC
PAGE - 6

1    Detective Christensen "deliberately or recklessly made false statements or omissions that were

2    material to the finding of probable cause." *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004);

3    *see Riveira*, 2019 WL 3238569, slip op. at 4.[4]

4         Accordingly, Plaintiffs fail to make a showing of unconstitutional conduct by Detective

5    Christiansen and, correspondingly, fail to overcome qualified immunity.[5] Claims based on this

6    conduct are DISMISSED without prejudice.[6]

7         3.   Claims Against Prosecuting Attorney Ernsdorff

8         Plaintiffs allege that Mr. Ernsdorff "advised, directed, assisted, and/or participated in the

9    drafting of the probable cause certifications." (Dkt. No. 1 at 9.) This, according to Plaintiffs,

10   constitutes judicial deception and fabrication of evidence in violation of the Fourteenth

11   Amendment, malicious prosecution in violation of the Fourth and Fourteenth Amendments,

12   unlawful seizure in violation of the Fourth Amendment, and conspiracy to violate the First,

13   Fourth, and Fourteenth Amendments. (*Id.* at 3–5, 12, 15–16.) The City Defendants argue these

14   claims similarly fail, but this time because Prosecuting Attorney Ernsdorff is entitled to *absolute*

15   immunity. (*See* Dkt. No. 16 at 13–17.) Here, again, the Court agrees.

16        Indeed, most claims for monetary damages against prosecutors are barred by absolute

17   prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). This immunity

18   applies to conduct "intimately associated with the judicial phase of the criminal process,"

19   _____

20
21   [4] A claim of judicial deception cannot be based on "an officer's erroneous assumptions about the evidence he has received." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009).

22
23   [5] Because the Court finds no constitutional violation by Detective Christiansen, it further dismisses the contingent claims of failure to intervene against Detectives Stolt and Meyst. (*See* Dkt. No. 1 at 16–18.)

24   [6] Plaintiffs' *Brady* claim, *see Brady v. Maryland*, 373 U.S. 83 (1963), against Christiansen also
25   fails. *See Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (citing *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992) (stating that the duty of the police is only to turn
26   evidence over to the prosecutor)).

ORDER
C24-0108-JCC
PAGE - 7

protecting prosecutors when they perform traditional activities related to the initiation and presentation of criminal prosecutions. *Id.* at 430–31. It further covers "the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution." *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001). However, "absolute immunity may not apply when a prosecutor is not acting as an officer of the court, but is instead engaged in other tasks, say, investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (internal quotations and citations omitted).

Here, beyond mere conclusions and formulaic recitations, Plaintiffs fail to adequately allege that Prosecuting Attorney Ernsdorff acted in an investigative capacity, thereby overcoming absolute immunity. (*See generally* Dkt. No. 1.) For example, the complaint alleges that Mr. Ernsdorff "fabricated probable cause" and "continued to investigate and manipulate the investigation despite knowing [he] lacked any legal basis." (*Id.* at 1, 8–9, 16.) And although courts "must take all of the factual allegations in the complaint as true" at the dismissal stage, they "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Finally, even assuming some of Prosecuting Attorney Ernsdorff's actions *were* investigatory in nature, Plaintiffs fail to identify how they would overcome qualified immunity for claims based on those actions.

Accordingly, Plaintiffs' § 1983 claims against Prosecuting Attorney Ernsdorff are DISMISSED without prejudice.[7]

### 4. Deprivation of Familial Relationship Claim

Plaintiffs assert that Jacinta Stanley, Mr. Stanley's mother, was deprived of a familial relationship with her son, in violation of the First and Fourteenth Amendments. (Dkt. No. 1 at

---

[7] Plaintiffs' *Brady* claim against Prosecuting Attorney Ernsdorff also fails because "[a] prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is . . . an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages." *Broam*, 320 F.3d at 1030.

18.) But as the City Defendants note, (*see* Dkt. No. 17 at 15), "[r]ecovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation." *Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F. App'x 527 (9th Cir. 2016) (citing *Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004)). And Plaintiffs fail to demonstrate such a violation, *see supra* Parts II.C.2, 3. Nor do they respond to this argument in the opposition brief, (*See generally* Dkt. No. 30), effectively conceding it. *See, e.g.*, *Bruce v. Reconstruct Co., N.A.*, 2016 WL 304802, slip op. at 6 (W.D. Wash. 2016) (a plaintiffs' failure to respond to a defendants' argument can be construed as conceding that the argument has merit.)

Accordingly, Ms. Stanley's deprivation of familial relationship claim is DISMISSED without prejudice.

### 5. Injunctive & Declaratory Relief

Plaintiffs seek injunctive relief and/or a declaratory judgment against King County for the King County Superior Court's alleged unconstitutional practices (including approving the probable cause statement). (*See* Dkt. No. 1 at 18–22) (citing 28 U.S.C. § 2201–02 and RCW 7.24).[8] But as the Ninth Circuit explained, county courts are "arms of the state for Eleventh Amendment purposes." *Simmons v. Sacramento Cty. Super. Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003). And "[f]ederal courts are without jurisdiction to entertain suits seeking civil damages against a state." *Prod. & Leasing, Ltd. v. Hotel Conquistador, Inc.*, 709 F.2d 21, 21 (9th Cir. 1983) (per curiam). As such, to the extent Plaintiffs bring claims against King County based on the acts of its Superior Court, they are not cognizable. *See Rackliff v. King Cnty. Superior Ct.*,

---

[8] According to the complaint, "after initial discovery, [Plaitniffs] will move for declaratory relief and a permanent injunction unless the County has satisfied [them] that this continuing problem of major public importance is resolved." (*Id.* at 22.) The Court notes that while there is an "inherent difficulty of identifying specific policies absent access to discovery, that is nonetheless the burden of plaintiffs in federal court." *Jones v. Cty. of Contra Costa*, 2016 WL 1569974, slip op. at 2 (N.D. Cal. 2016).

1    2019 WL 1040399, slip op. at 2 (W.D. Wash. 2019).

2           Assuming Mr. Stanley brings claims against King County for conduct other than that

3    engaged in by its court, the claims fail nonetheless because he lacks standing. A party seeking

4    injunctive relief must plead they have "sustained or [are] immediately in danger of sustaining

5    some direct injury as the result of the challenged official conduct and the injury or threat of

6    injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v.*

7    *Lyons*, 461 U.S. 95, 102 (1983) (internal quotations omitted). And here, Mr. Stanley fails to

8    demonstrate that he is subject to such an immediate threat. Moreover, the "capable of repetition

9    yet evading review" doctrine is inapplicable because, as the County Defendants note, an alleged

10   lack of probable cause due to a deficient Superior Court filing system is fully reviewable through

11   the state appellate process. (*See* Dkt. No. 34 at 7) (citing *State v. Vazquez*, 34 P.3d 1255, 1260

12   (Wash. Ct. App. 2001)).

13          Accordingly, Plaintiffs' claim(s) seeking injunctive and/or declaratory relief are

14   DISMISSED without prejudice.

15          **D.    Wrongfully Convicted Persons Act**

16          Plaintiffs also asserts that Mr. Stanley was wrongfully convicted and imprisoned for a

17   crime he did not commit, in violation of the WCPA. (Dkt. No. 1 at 23–24.) But as Defendants

18   note, (*see* Dkt. Nos. 16 at 17–18, 17 at 16–17), and Plaintiff apparently concedes, (*see* Dkt. No.

19   18 at 27), a WCPA claim may only be brought against the State of Washington. *See* RCW

20   4.100.020. Therefore, Plaintiff's WCPA claim(s) against the City of Seattle and King County fail

21   as a matter of law. They are DISMISSED with prejudice.

22          **E.    Other State Law Claims**

23          Finally, Plaintiffs assert various other state law claims based on this Court's supplemental

24   jurisdiction pursuant to 28 U.S.C. § 1367. Because, as described above, the federal claims are

25   inadequately pleaded, the Court lacks federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1343.

26   And, lacking this jurisdictional anchor, the Court declines to exercise supplemental jurisdiction

1  over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

2  **III.      CONCLUSION**

3          For the foregoing reasons, the motions to dismiss (Dkt. Nos. 16, 17) are GRANTED in

4  part. All federal claims are DISMISSED without prejudice and with leave to amend. The WCPA

5  claims is DISMISSED with prejudice. The Court DECLINES to exercise supplemental

6  jurisdiction over the remaining state law claims.

7          If Plaintiffs wish to amend their complaint, they must do so within thirty (30) days of the

8  entry of this order. If they do, they may reassert all claims otherwise dismissed without prejudice

9  above, as well as claims for which Plaintiffs ask the Court to exercise supplemental jurisdiction.

10  Absent an amended complaint, judgment will be entered in 30 days.

11          DATED this 8th day of August 2024.

12

13

14

15  John C. Coughenour
    UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26