HON. RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| SLOAN STANLEY and JACINTA STANLEY<br><br>Plaintiffs,<br><br>v.<br><br>KING COUNTY, CITY OF SEATTLE, CLIFF BORJESON, RANDE CHRISTIANSEN, GARY ERNSDORFF, NICHOLAS MEYST, and JASON STOLT<br><br>Defendants. | NO. 2:24-cv-108-RAJ<br><br>REPLY<br><br>On Plaintiff's Motion For Partial Summary Judgment |

## I. FACTS RELEVANT TO ERNSDORFF'S ARGUMENTS

Ernsdorff stakes a dubious claim to blissful ignorance that only the jury can reject. However, even under the summary judgment standard, he cannot disclaim the knowledge of how space and time govern the lives of all humans and the mechanisms we set in motion.

Ernsdorff admits to quarterbacking the surveillance operation but is quite proud to have outdone his colleague, Lynne Kalina, in that his detective signed the false Certification rather than himself. Although the Supreme Court ruled nearly 30 years ago that Kalina[1] shed her cloak of immunity by signing her own false certification, it has never ruled that instructing a detective to provide a false certification for future use in opening a criminal case is so protected.

---

[1] Kalina v. Fletcher, 522 U.S. 118 (1997).

Reply on MSJ Partial
C24-108-RAJ

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **1** of **10**

The facts of the Certification's falsehood are also twofold. First, there are the many lies and material omissions that Ernsdorff's putatively innocent brain is said to have never grasped.

Second, there is the fact that Ernsdorff and Christiansen obtained the surveillance warrant precisely because neither snitch could cross-corroborate over the years, miles, and informant reliability standards. As the surveillance application illuminates, only the audio could supply probable cause and, given the hundreds of hours recorded, it would have been temporally impossible to listen to it in the 2-3 days between Christiansen picking up the device in Walla Walla on August 7th (Dkt. # 75-9 at 15) and forwarding the false Certification to Ernsdorff on August 10, 2017. Id. at 21.

In other words, no ostrich-inspired declaration or lawyerly portrayal of Ernsdorff's intermittent substantive ignorance can defeat his inherent knowledge of the temporal realm we all inhabit. Ernsdorff knew probable cause *depended on audio-recorded corroboration* of Temple and that, given the nature of how time marches on, he was requesting a Certification from Christiansen that could not be grounded in that foundational audio element because the hours of recording were several times greater than the hours between retrieving the recording device and drafting the false Certification. *See also* Dkt. # 75-9 at 28 (still listening to audio in November).

It is unclear, within the 'genuineness' of the summary judgment standard, whether the Court must indulge the claim that Ernsdorff took no part in the authorship of the false Certification. The jury will likely see as probative the continuity between Ernsdorff's admitted draftsmanship of the surveillance warrant application (Dkt. # 75-9 at 8) signed by Christiansen and subsequent approval of Christiansen's request to recycle portions of it while "writing up" the false Certification. Dkt. # 75-9 at 12. But the question need not be reached for summary

Reply on MSJ Partial
C24-108-RAJ

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **2** of **10**

judgment, as Ernsdorff's knowledge of the deficiency in corroboration is manifest because the audio could not have been reviewed in time; he knew he was soliciting a deficient Certification.

Ernsdorff's strenuous advocacy for his right to frame people with immunity also omits the indisputable mechanistic fact that, having been "screened" as to the results of the Temple interview, he *instructed* Christiansen to provide the false Certification to him. As this Court may be aware, the prosecution and police used a computer program called "E-LODI," by which Christiansen transmitted the false Certification to Ernsdorff. Dkt. # 19-5.

After the two had arranged and effectuated their surveillance operation, and discussed the results of the Temple interview on the phone, Ernsdorff instructed Christiansen to use the E-LODI system to convey the odious instrument precisely so that Ernsdorff could then embark on the immunized portion of his misconduct. "I'm working on the Probable Cause now. Do you want hard copies or are you accepting E-LODI?" asked Defendant Christiansen on August 9, 2017. Dkt. # 75-9 at 20.

Ernsdorff responded the same day. Although the unlawful redaction (two motions to compel are pending) hides much, it cannot be disputed that Ernsdorff instructed Christiansen to provide him the false Certification. "[unlawful redaction]... E-LODI is fine; make sure that they know to send it to me. ... I'd like to talk to [Intel] about how we may need to edit it." Id.

It makes no difference whether Ernsdorff can create a genuine factual issue as to his knowledge of Christiansen's specific lies. Ernsdorff cannot raise any doubt that he instructed Christiansen to send him a Certification that was false *ab initio* for the other reason: it lacked the only possible legal basis for probable cause by its premature genesis and disregard of the audio.

Reply on MSJ Partial
C24-108-RAJ

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **3** of **10**

## II. REPLY TO CHRISTIANSEN

Defendant Christiansen did not respond to Mr. Stanley's motion. Pursuant to Rule 56(e)(3), the Court should grant summary judgment against him.

## III. REPLY TO ERNSDORFF

At the outset, Mr. Stanley has always conceded the dystopian legal reality that prosecutors can indeed frame people while enjoying immunity for related advocacy, no matter how repugnant. Ernsdorff spills much ink to battle a contrary contention never raised by Mr. Stanley. Nor has Mr. Stanley argued that sufficiently corroborated prison snitches cannot contribute to probable cause under circumstances not present here. The tortfeasor doth protest too much.

**a. Ernsdorff's cloak of immunity does not touch the floor of his misconduct.**

In Buckley v. Fitzsimmons, there was also a special prosecutor like Erndsdorff. 509 U.S. 259, 262 (1993). Both special prosecutors committed acts falling just beyond the reach of their immunity-cloaks, which extend only as far as their "special functions." Id. at 268-69.

Special Prosecutor Knight and his ilk could be held accountable for the investigative portion of framing Buckley wherein, despite forensic failures to match Buckley's boot to that of a killer's boot-print, they "obtained a 'positive identification' from ... an anthropologist ... who was allegedly well known for her willingness to fabricate unreliable expert testimony." Id. at 263. "At the time of this witness shopping, the assistant prosecutors were working hand in hand with the sheriff's detectives under the joint supervision of the sheriff and" elected prosecutor." Id. at 272.

Similarly, Ernsdorff was working hand in hand with Christiansen, Meyst, and Stolt from the outset and, critically, neither tortious prosecutor had established "probable cause to have anyone arrested." Id. at 274.

Reply on MSJ Partial
C24-108-RAJ

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **4** of **10**

> That the prosecutors later called a grand jury to consider the evidence this work produced does not retroactively transform that work from the administrative into the prosecutorial. A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial. When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.

Buckley v. Fitzsimmons, 509 U.S. 259, 275-76 (1993).

Judge St. Clair's later finding of probable cause and issuance of the arrest warrant for Mr. Stanley similarly does not retroactively extend immunity to Ernsdorff. Whether false witness shopping or false Certification shopping, at least Buckley's prosecutors might scapegoat the hack anthropologist, whereas here the entire frame job was Ernsdorff's admitted brainchild.

Special Prosecutor Knight procured the expert who provided the lies. Special Prosecutor Ernsdorff procured Christiansen's false Certifications, which provided the lies. Both are immune for their later desecrations of due process.

If this were a case of prosecutorial immunity, Ernsdorff would be arguing that Christiansen slipped one past him, bamboozled him into framing Mr. Stanley, so to speak. Instead, his short and feeble declaration disclaims "substantive contributions to the probable cause certification itself" despite advising Christiansen while the latter drafted it. Dkt. # 102 ¶ 3.

Even accepting his profusely declared substantive ignorance as true, Ernsdorff cannot disclaim knowledge that he instructed Christiansen to supply the Certification unsupported by the foundational element of corroborative audio. Moreover, any concern about whether there is a genuine issue of mental state should be remedied by removal of the unlawful redactions, most of which appear in a context strongly suggesting they hide Ernsdorff's confession. Dkt. # 75-9 at 3-11, 13-15, 18-21, 28.

Reply on MSJ Partial
C24-108-RAJ

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **5** of **10**

### b. Even if Ernsdorff had immunity for soliciting the false Certification, he nonetheless conspired with and contributed to the overall frame-up.

Ernsdorff is confused about why he lacks immunity for shaping the investigation and working in lockstep with the detective over whose signature the false Certification was laundered. This despite admitting he was the architect of the surveillance operation.

To begin with, immunity is shed merely by giving advice to police officers, which Ernsdorff admits doing throughout the investigative period. Burns v. Reed, 500 U.S. 478, 492 (1991). In Burns, the prosecutor was immune for participating in the sham probable cause hearing, but not for advising officers to "proceed with the hypnosis" to interrogate the plaintiff who they suspected of having multiple personalities. Id. at 482.

Ernsdorff similarly counselled the police defendants for weeks if not months. Beyond quarterbacking the entire investigation, Ernsdorff also instructed officers to proceed with a hairbrained surveillance operation instead of interviewing the many people who had known Mr. Stanley as a nice guy in prison who never threatened anyone.

In Broam v. Bogan, Prosecutor Bogan "worked closely with" and instructed his detective to avoid contact with the detective's own brother-in-law, who the victim had identified as "a material percipient witness." 320 F.3d 1023, 1027 (9th Cir. 2003). Although the Broam complaint lacked sufficient dates to make the ultimate determination, the court held that "if these events occurred *before* probable cause was established," Bogan would not be immune. Id. at 1033.

Christiansen testified that, because of Ernsdorff's "fork in the road" decision to implement the surveillance operation, he did not interview the many potential witnesses who knew Mr.

Reply on MSJ Partial
C24-108-RAJ

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **6** of **10**

Stanley during his incarceration.   Dkt. # 75-2 at 24:17-25.  Under Broam, Ernsdorff's suppression of the investigation occurred well before immunity attached.  320 F.3d at 1033.

However, Ernsdorff also cannot don the cloak of immunity for his pre-charging participation as a co-conspirator pursuant to Mr. Stanley's seventh claim.  Dkt. # 91 at 12-13.  A Section 1983 conspiracy is proven by,

> (1) the existence of an express or implied agreement among the defendant[s] ... to deprive [a plaintiff] of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. A conspiracy to deprive a plaintiff of a civil rights action by lying or concealing evidence might constitute such an actionable deprivation.

Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991).

No amount of blissful ignorance or immunity can dispute the undisputable fact that Defendants all agreed to mock up a verisimilitude of probable cause.  As stated *supra,* Ernsdorff might be heard to claim bizarre intermittent ignorance as to the specific lies but he cannot deny that he agreed -even *instructed*- Christiansen to officially "E-LODI" the false Certification before anybody had listened to the 174 fundamentally necessary hours of audio recording.

Even if this Court considers Ernsdorff's dubious claim to ignorance as genuine enough to raise a question of fact for the jury, the same cannot be said for the impossibility of forming probable cause without audio recordings.  Nor, for purposes of defending against the judicial deception claim, has Ernsdorff even presented a "corrected and supplemented" rebuttal exhibit to refute the materiality of the lies and material omissions he requisitioned from Christiansen.  Dkt. # 100 at 16 (quoting Chism v. Washington State, 661 F.3d 380, 389 (9th Cir. 2011)).

Finally, any summary judgment presumptions in Ernsdorff's favor should be neutralized by the age old counter presumption.  "[A] person intends the natural and probable consequences of acts intentionally done...." Agnew v. United States, 165 U.S. 36, 50 (1897).

Reply on MSJ Partial
C24-108-RAJ

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **7** of **10**

### c. Ernsdorff's intent and improper motive are beyond debate.

Ernsdorff argues that his malice is "unsupported by any competent evidence" despite his coconspirator imputing the malice to him and his own emails agreeing to the malicious purpose. On July 27, 2017, Christiansen emailed his superior, "Just talked to Pros. Ernsdorff. The trip to Walla Walla will be either August 7 or 8th. That will give the time to RUSH file case for warrant, since all of us are gone the next week." Dkt. # 75-9 at 2.

Ernsdorff cannot refute that he filed the case prior to having probable cause and after the following August 4th email exchange:

CHRISTIANSEN:

> Gary, Just left you a voicemail. Unfortunately, I believe the time is set to be able to file the case. None of us are around the week [Stanley] is to be released and we need to get him charged and arraigned prior to everyone gone. ... I will plan on filing the case [in E-LODI] with the information we have to date[,] along with the information from [Temple] on Wednesday 8/9 for a RUSH FILING [in court].

Dkt. # 75-9 at 13.

ERNSDORFF:

> [unlawfully redacted sentences] I have asked Todd to arrange for an update with [Temple] on Monday morning.

CHRISTIANSEN:

> I also understand, but [unlawfully redacted] there is no way we can just let his time expire and be released knowing he may have a gun waiting.

Dkt. # 75-9 at 13.

The email thread ends at "Fri, 04 Aug 2017 13:28" without any reply produced in discovery which, given the record of noncompliance with discovery rules, does not mean that

Reply on MSJ Partial
C24-108-RAJ

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **8** of **10**

Ernsdorff never replied. Nonetheless, while Ernsdorff was off on a hike, his partner David Seaver had much to say (mostly redacted) the following Monday.

> SEAVER:
>
> Gary asked me to cover for him while he's out of the office today and tomorrow. He mentioned to me [unlawfully redacted]. Thanks, and sorry for sticking my nose into this.
>
> CHRISTIANSEN:
>
> Unfortunately, I have no other days to travel to the location. Its tomorrow or never. My last day prior to his release on 8/17 (Along with both Gary [Ernsdorff] and Nick [Meyst]) is 8/11 Friday and then no time to file the case.
>
> We will just have to work with what we have. We can't take the chance that we did nothing and let him get out knowing he may have a gun waiting.

Dkt. # 75-9 at 15.

The "What we have" described by Christiansen was absolutely nothing. While Ernsdorff might have been positioned to claim innocence by virtue of his hiking absence, he cannot alter time.

August 17th was Mr. Stanley's earned release date and August 17th is the date stamped on Ernsdorff's information. Dkt. # 19-2. By his actions, Ernsdorff confirmed what his words might otherwise deny -he filed the false Certification in the nick of time to prevent Mr. Stanley's constitutionally mandated release, and knowing the audio had never been reviewed.

**d. Ernsdorff asks this Court to disturb the ruling of the Mason County Superior Court and the binding opinion of the Ninth Circuit.**

Ernsdorff claims "the combined information from Burleson and Temple was sufficient to establish probable cause to arrest Stanley...." Dkt. # 100 at 23. This is preposterous given that Judge Cobb ruled after Temple's exclusion from trial, and given that the Ninth Circuit has already

Reply on MSJ Partial
C24-108-RAJ

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page **9** of **10**

confirmed that the well-pleaded facts "undermined the existence of probable cause in 2017." Dkt. # 53 at 2.

It also violates judicial estoppel principles because the surveillance warrant argued for audio recordings as the basis for probable cause. Judge Oishi's judicial acceptance of this prior contrary assertion is embodied in the warrant itself. New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (clearly inconsistent positions cannot be argued when the first was judicially accepted and the second would "create the perception" that one or the other court was misled).

## IV.  CONCLUSION

Special Prosecutor Ernsdorff is an absolute master of criminal law, whose vast experience and knowledge make him an expert on probable cause. He cannot claim ignorance as to what he did and he cannot don the cloak of immunity while soliciting Christiansen's false Certification.

This is particularly true given that Ernsdorff drafted and filed the surveillance warrant application precisely because two different informants in two different prisons in two different years never could corroborate one another. Though the summary judgment standards might permit him to claim outlandish intermittent ignorance of the lies in the Certification, Ernsdorff cannot disclaim knowledge that it was unsupported by the only legally cognizable corroboration available - the audio recordings reviewed months later.

Respectfully Submitted

By  *s/ Jackson Millikan*
Jackson Millikan, WSBA # 47786
Attorney for Plaintiffs

By his signature above, Jakson Millikan hereby swears that this Motion contains 2,694 words exclusive of the title block, footers, and signature line in accordance with the 4,200-word limit in LCR 7(e)(4).

Reply on MSJ Partial
C24-108-RAJ

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Page 10 of 10