HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

SLOAN STANLEY and JACINTA STANLEY

Plaintiffs,

v.

KING COUNTY, CITY OF SEATTLE and, individually, Detectives RANDE CHRISTIANSEN, NICHOLAS MEYST, and JASON STOLT, Internal Affairs Sergeant CLIFF BORJESON, and Prosecutor GARY M. ERNSDORFF

Defendants.

NO. 2:24-cv-108-RAJ

Motion Requesting Consideration of Unredacted Emails in Pending MSJ as to

CITY DEFENDANTS

Noted for: Monday, July 20, 2026

## I.    PROCEDURAL FACTS

This brief is responsive to the Court's Order of June 10, 2026. Dkt. # 150. As the Court is familiar with the discovery issues predating the hearing of June 9th, including the County's production of 15,628 pages between close of discovery and the hearing, this brief will address what has occurred since.

The Order required the County to file a status update, which was accomplished on June 22, 2026. Dkt. # 156. The County indicates another "489 emails ... will be produced no later than June 29, 2026," which is also the due date of this brief, making it unlikely they will be addressed herein.

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Two days after the filing date of the Order, the City produced 495 pages of unredacted emails from among the 15,628 pages that had been produced by the County in redacted form. Ex. 9. Once again, as discussed in prior motions and at the hearing, the City revealed that it had consulted the County "on June 9" and was removing prior work product redactions of and for the County on that basis. Id.

Plaintiffs have now endeavored to crosscheck the City's June 12 production with both the City's prior production and the County's 15,628 pages produced since close of discovery. Once again, Plaintiffs cannot be 100% certain of the state of discovery in time for the deadline of this brief, especially as to the forthcoming 489 emails, and, given the impermissibility of reply briefing, must pre-assert that any error in the briefing is from confusion and fatigue not duplicity (as the City will surely claim).

Section 3(c) of the Order allows briefing the issue of amending summary judgment motions, with the caveat that "Plaintiffs must bifurcate" the briefing such that the value of each party's late production is analyzed as to summary judgment against that producing party. Plaintiffs do not request amendments to the MSJ; just supplementation of the existing exhibits.

It is also difficult to conform this brief to the ordered bifurcation on summary judgment-effects (segregating the MSJ-effects of new production as to the producing party) given that the City has again produced the County's unredacted documents. The bifurcation aspect is further complicated by the nature of the case; the allegations themselves are not segregated because there was a concerted effort by all defendants to accomplish the constitutional torts alleged in the First Amended Complaint.

DISCOVERY BRIEF AS TO THE CITY

Page **2** of **11**

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

It is, thus, difficult to know whether it is permissible to discuss how documents produced by one party should supplement the MSJ-analysis as to another party. Plaintiffs respectfully hope the Court will tolerate some cross-party attribution of MSJ-relevance.

## II.  ANALYSIS ALONG BIFURCATED LINES

Plaintiffs do not move for any *in camera* review or other relief as to City Defendants. Plaintiffs also do not seek amendment of the MSJ if the following unredacted versions of emails can simply be considered in ruling on summary judgment, as most if not all appear in the record already. To this end, Declaration of Millikan contains a cross-reference table.

Per the Order, the following exhibits will be (i) identified and (ii) how each would have been used in support of Plaintiffs' Partial MSJ (leaving unaddressed the relevance to non-MSJ claims like Retaliation and Fabrication of Evidence) will be set forth. The highlighted portions of the Exhibits indicate where redactions had previously been placed.

### Exhibit 1

1.  Exhibit 1 is an unredacted version of the July 27, 2017 email thread appearing at Docket # 75-9 at 3-4. This thread demonstrates the prosecutor's intern attempting to obtain information to plug into the template surveillance warrant application under the "reasonable fear" element of the harassment statute. Beyond the Fabrication of Evidence claim (not presented in the MSJ), Exhibit 1 would have been used to demonstrate or strengthen the following:

- *Mental States of Christiansen and Ernsdorff*:  Even the KCPAO intern, Nick Cody, knew to ask the important question: "In what way did Detective Christiansen ... communicate to Stanley's original victims ...that Stanley was making threats to harm them?"  Ex. 1 at 1

(12:41 PM). Christiansen admitted he did NOT communicate Burleson's unreliability. Dkt. # 75-2 at 31:25.

- *42 U.S.C. § 1983 Conspiracy -Agreement of Ernsdorff/Christiansen*: Ernsdorff forwards Intern Cody's reasoned request for information to Christiansen, scrubbing Cody's query as to *how* the nonexistent 'threats' were passed along. Id. (12:49 PM). It becomes nothing more than a request for confirmation that the necessary "reasonable fear" has been implanted in the minds of future trial witnesses. RCW 9A.46.020(1)(b). Plaintiffs would also very likely have sought third party discovery from Mr. Cody, particularly given that he chose to enter private practice. Mr. Cody will be added to the witness list.

### Exhibit 2

2. Exhibit 2 is an unredacted version of the already revelatory July 28, 2017 email thread appearing at Docket # 75-9 at 5. The thread demonstrates Defendants Ernsdorff and Christiansen knew the precise dates that Burleson and Mr. Stanley were housed together. Exhibit 2 would have been used to further demonstrate or strengthen the following:

- *Mental States of Christiansen and Ernsdorff*: A couple weeks before Christiansen wrote, and Ernsdorff filed, the statement, "[CW #1] was housed in the same sell as [Stanley] for over one month" in the false Certification for Determination of Probable Cause ("Certification" Dkt. # 19-2 at 8), these emails confirm (i) mutual understanding that the statement was a lie and (ii) a willingness/ability to be forthright with one judge - Judge Oishi- for purposes of securing a search warrant but dishonest with another - Judge St. Clair- for purposes of getting an arrest warrant.

DISCOVERY BRIEF AS TO THE CITY

Page **4** of **11**

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

## Exhibit 3

3.      **Exhibit 3** is an unredacted and supplemented version of the August 4, 2017 email thread appearing at Docket # 75-9 at 13-4.  The top paragraph had never been produced prior to May 29, 2026, when the County produced it in redacted format (KC-20568).   Then the City produced it on June 12, 2026 in unredacted format.  Ex. 9.

**Exhibit 3 is listed in bold** because, although presented in chronological order, it is the most revelatory.  August 4th was the Friday before Ernsdorff would go hiking and return the following Wednesday.   It is rare in litigation, particularly of constitutional magnitude and involving a conspiracy, to uncover a 'smoking gun' statement as dispositive as this:  **"I agree there is no way we are letting [Mr. Stanley] out."**  Exhibit 3 would have been used to demonstrate or strengthen the following:

- *Knowledge and Improper Purposes of Christiansen and Ernsdorff*:  The newly unredacted portion on Page 2 (10:48 AM) uncovers the tension that Plaintiffs had only inferred in the MSJ, as between Christiansen's haste and Ernsdorff/Seaver's seeming lawyerly prudence. Dkt. # 73 at 27.  After this remark about possibly extending the surveillance operation, Christiansen leaves "a voice mail" rather than respond in writing, then explains the "RUSH FILING" haste and intention to run with whatever they have "on Wednesday 8/9...." Ex. 3 at 1 (voicemail never produced).

- *42 U.S.C. § 1983 Conspiracy -Agreement* and *Knowledge and Improper Purposes of Christiansen and Ernsdorff*:  The next two unredacted portions (1:24 PM; 1:32 PM) reveal a terse exchange in which Detective Christiansen's knowledge, intent, and purpose are

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

exposed once and for all, along with an accusation: "you had confirmed we have a [file-able] case, although possibly weak, but" they simply must deprive Mr. Stanley his constitutional right to release from prison. Ernsdorff's response settles his intentional mental state once and for all (which is addressed in the other brief) but also shows agreement for the conspiracy claim.

- *42 U.S.C. § 1983 Conspiracy* and *Causation not Severed by Independent Prosecutorial Judgment:* The supplemental portion found at the top of Exhibit 3, Page 1, is mostly relevant to Ernsdorff's intent, purpose and immunity, addressed in the other brief. However, as coconspirators, it dispels any notion that Christiansen lacked the agreement of Ernsdorff in his improper purpose of removing Stanley from society regardless of due process. This also inherently defeats any argument that independent prosecutorial judgment severed the causality of Christiansen's tortious conduct because they agreed, even before interviewing Temple, "there is no way we are letting [Mr. Stanley] out." Dkt. # 158-3.

### **Exhibit 4**

4. Exhibit 4 is an unredacted version of the August 7, 2017 email thread appearing at Docket # 75-9 at 18. This is the period during which Ernsdorff has gone hiking and will not return until August 9, which necessitates his partner, David Seaver, filling in. Exhibit 4 would have been used to demonstrate or strengthen the following:

- *42 U.S.C. § 1983 Conspiracy -Agreement* and *Knowledge and Improper Purposes of Christiansen and Ernsdorff*: Exhibit 4 mainly fills in the gaps that caused Plaintiffs to

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

state, "redaction seems to mask Prosecutor Seaver's caution against haste." Dkt. # 73 at 27. It reveals that the prosecutors were not legally or morally, but rather logistically, resisting Christiansen's haste. The logistical issue is whether to interview both Temple and Mr. Stanley on August 8, which would reveal the existence of the operation to Stanley who they considered (without any history of violence) to be more dangerous than the Green River Killer apparently.

Plaintiffs would have liked to depose Mr. Seaver about the contents of the phone call demanded by Christiansen after Seaver confirms that the interagency conspiratorial agreement and unlawful purpose are ironclad. That portion also further dispels any sub-intentional mental state of Ernsdorff, which is addressed in the other brief ("Gary made it clear ... that we'll file on the target before he's released, and there's no way we'll let him out."). Ex. 4 at 1.

### Exhibit 5

5. Exhibit 5 is an unredacted version of the August 9, 2017 email thread appearing at Docket # 75-9 at 20. This is the Wednesday on which Ernsdorff has returned from hiking and the day after Christiansen has interviewed Temple, learning that he heard no threats from Stanley. Exhibit 5 would have been used to demonstrate the following:

- *Christiansen's Mental State* and *42 U.S.C. § 1983 Conspiracy -Agreement*: The email thread occurs on both sides of Christiansen's trip to Walla Walla. As revealed in Exhibit 4, there is a concern that interviewing Mr. Stanley prior to obtaining probable cause from the surveillance operation would functionally end the operation and perhaps endanger

DISCOVERY BRIEF AS TO THE CITY

Page **7** of **11**

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Temple. On August 9th, when Ernsdorff returns and has "heard" from someone -likely Seaver- "that Billy [Temple] got some good conversation," he turns to ensuring Christiansen's detectives properly edit the recording. Ex. 5 at 1.

At this point, there seems to be a consensus that Temple and the recording did provide probable cause. It appears, after legal consultation with Seaver by telephone (Ex. 4 at 1), that Christiansen was entrusted with determining whether the operation had succeeded, and pretended that it had.

Christiansen's 10:21 AM email to Ernsdorff had always been unredacted, and was used in multiple defense briefs, as well as Professor Mourtgos' expert witness report, to support the proposition that Temple had corroborated himself. The newly unredacted portion of Ernsdorff's 10:54 response, "Sounds like this ended up pretty good," occurs after Christiansen's investigation report entry, "45) 08/09/17 1030 Screened events [of] yesterday with ... Ernsdorff." Dkt. # 104-16 at 17.

While Christiansen's response to the 10:54 email is conspicuously absent, Plaintiffs hope it will arrive on Juney 29th with the County's promised final trove. In any case, Ernsdorff's approval at 10:54 comes after his consultation with Seaver and Christiansen, when it would have been clear that the operation and hopes of probable cause had failed.

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

**Exhibit 6**

6.    Exhibit 6 is an unredacted version of Erndorff's August 22, 2017 email instructing Detectives Christiansen and Meyst to engage in three tasks that, had they been fruitfully performed prior to August 11, might have produced probable cause. Dt # 75-9 at 24. The delay further underscores the coconspirators' willingness to let the improper ends justify the means.

The unredacted tasks are to (1) look for the supposed gun in Mr. Stanley's car (it was in a safe in Idaho), (2) actually listen to the audio recordings that were so vital to probable cause according to the surveillance warrant application, and (3) look for threats on Mr. Stanley's jail calls (there were none).

Although the City has recently provided many other useful emails, they are not necessary for summary judgment. The next section may not be fully compliant with the Order because it discusses a few emails provided by the County that would have been used in the MSJ as to Detective Christiansen.

### III.   NON-BIFURCATED EXHIBITS

As explained *supra*, bifurcation precludes full analysis of the utility of the production in summary judgment. As such, and may it please the Court, the following are documents produced by the County that would have been used to support the MSJ against City Defendants.

**Exhibit 7**

7.    Exhibit 7 is a newly revealed, never redacted, August 1, 2017 email thread from Judge Oishi, who authorized the surveillance operation. Judge Oishi writes to Defendant Prosecutor Ernsdorff that Christiansen is in the Judge's physical presence for issuance of the warrant. Exhibit 7 would have been used to demonstrate or strengthen the following:

DISCOVERY BRIEF AS TO THE CITY

Page **9** of **11**

- *Judicial Estoppel as to Christiansen*:  Applying to Judge Oishi for the surveillance warrant, Christiansen wrote correctly in his sworn affidavit that the sole trial witness to felony threats, Randy Burleson, "suffers from a distinct lack of credibility ... [a]s a many-times-over convicted felon who has ... spent a great deal of time in prison."  Dkt. # 19-10 at 10.

Exhibit 7 would have been used —contrary to Christiansen's deposition testimony that the surveillance warrant was a mere formality performed "as an email to the judge"— to show that Christiansen was present with Judge Oishi while asserting the absolute necessity of Temple/audio recordings.  Dkt. # 75-2 at 26:13.

Under no circumstances should a law enforcement officer who goes *in person* and *ex parte* to a judge, and submits a sworn position "inconsistent with" Burleson's ability to supply probable cause by alone, be heard to later play "fast and loose with the courts" by asserting Burleson alone was sufficient.  New Hampshire v. Maine, 532 U.S. 742, 750 (2001).  The email also illustrates the magnitude of the sacred trust with which law enforcement is imbued as to *ex parte* proceedings that hold the fate of ordinary people in the balance.

## **Exhibit 8**

8.      Exhibit 8 is an email between Ernsdorff and Mr. Stanley's DOC community custody officer from the 2014 criminal case.  Although Ernsdorff is immune at this point, September 10, 2018, the email further confirms that Christiansen knowingly lied in his Certification by claiming, "Almost immediately [Mr. Stanley] violated the ... DOSA...."  Dkt. #

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

19-2 at 8. In response to DOC Black's explanation of the timeframe, Ernsdorff responds, "I'd hoped to show that he violated very quickly. Three and a half months is not that quick." Ex. 8 at 1.

### IV. CONCLUSION

Plaintiffs respectfully request that the Court consider the foregoing exhibits in its analysis of the pending MSJ.

By *s/ Jackson Millikan*

Jackson Millikan, WSBA # 47786
Attorney for Plaintiffs

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com