HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

SLOAN STANLEY and JACINTA STANLEY

Plaintiffs,

v.

KING COUNTY, CITY OF SEATTLE and, individually, Detectives RANDE CHRISTIANSEN, NICHOLAS MEYST, and JASON STOLT, Internal Affairs Sergeant CLIFF BORJESON, and Prosecutor GARY M. ERNSDORFF

Defendants.

NO.  2:24-cv-108-RAJ

Opposition to City's Fee Shifting Motion

## I.  **INTRODUCTION**

The Court ordered that "[a]ny responses" to Plaintiffs' briefs "must be filed on or before **Monday, July 6, 2026.**" Dkt. # 150 at 4 (Emphasis in original).  The Court further ordered that City Defendants "may ... utilize their response to renew their request for fees incurred in responding to Plaintiffs' Motion to Compel Discovery...."  Id.

On Wednesday, July 8, 2026, both the County and City filed their responses two days late. Dkt. ## 162, 165.  The City filed its fee motion separately from its response, also two days late.

The motion practice arises from a set of facts best characterized by a judicial admission in Defendants' fee motion.  "City Defendants offered to run search terms on the emails" for the first time during the Rule 37 phone call, 503 days after the discovery was owed.  Dkt. # 166 at 4.

OPPOSITION TO SHIFTED FEES

Page **1** of **15**

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

## II. <u>FACTS</u>

This brief will first address the procedural facts of discovery and how they affected the merits briefing.  Then it will briefly touch on the factual averments underlying the portion of the City Defendants' ("Defendants") brief dedicated to characterizing Plaintiffs' Counsel, leaving the subjective aspects to Declaration of Millikan.

### a. Procedural Facts

Defendants moved for summary judgment on February 12, 2026.  Dkt. # 103.  "No reasonable juror could infer that Christiansen and Ernsdorff shared a common objective to violate Stanley's rights."  Dkt. # 103 at 30.  "Stanley cannot establish a deliberate falsehood or reckless disregard for the truth" because "there is *no evidence* that would allow Stanley to meet his burden."  <u>Id</u>. at 16 (Oh, there was evidence).

Even as Defendants argued a lack of mental state and conspiracy evidence, they were concealing that very same evidence.  The August 4, 2017 email thread between Christiansen and Ernsdorff demonstrates mutual intent to keep Mr. Stanley in prison no matter what.  Dkt. ## 158-3 ("**I agree there is no way we are letting him out**."); 157 at 5 (discussing smoking gun).

Even the portion that Christiansen had refused to un-redact until June 12, 2026 is quite material.  It shows Christiansen arguing that Ernsdorff had already committed to framing Stanley and should not go back on his word: "**but you had confirmed we have a [file-able] case, although possibly weak**...."  Dkt. # 158-3 at 1.

The Court did not invite any briefing on how the newly produced or unredacted evidence would affect Defense summary judgment motions.  However, this goes to the 'substantially' justified argument *infra* because, like all the relevant emails produced by City Defendants, it came way after the motion to compel and, in this instance, after the initial close of discovery.

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

On June 29, 2026, the County also produced several emails from 2016 and 2017 in which City Defendants are participants.  Exs. 1, 2.  The City has never produced these (the oldest 2016 email produced by the City being dated July 1st, and bearing Bates Stamps 13770-72).

The March 7, 2016 email shows that Prosecutor Kimberly Wyatt, who had been part of the 2014 prosecution team, continued to keep Christiansen updated on Mr. Stanley's movements.  Ex. 1 at 2.  This is relevant to all Defendants' longstanding fixation with Stanley.

The June 30, 2016 email thread consists of DOC Officer Angella Coker notifying Christiansen and others about Stanley's technical DOSA violation and attaches the Facebook messages in which Stanley requested evidence from a witness (not victim), Jennifer Vinz.  Ex. 1 at 3-12.  The exhibit is further evidence that Christiansen knew Vinz was not a "victim" of the 2014 case, contrary to what he swore in his Probable Cause Certification ("Certification").  Dkt. # 19-2 at 8.

Most strikingly, the exhibit impeaches Christiansen's deposition testimony.  Christiansen testified that he had never reviewed the Facebook messages prior to characterizing them in the Certification.  Dkt. # 75-2 at 35 (43:12).  He literally received them from DOC Coker as an attachment and then forwarded them to Wyatt.  Ex. 1 at 3.

The July 15, 2016 email shows another prosecutor from the 2014 case, Wesley Brenner, (also a faux 'victim' cited in Burleson's Tale of 2017) looping SPD Victim Advocate ("VA") Griffith into a conversation with Vinz.  Ex. 1 at 13.  Both Defendant agencies were aware that Vinz was a third party and never subjected to constitutionally unprotected speech.

The June 5, 2017 email thread pulls back the veil that had enshrouded the inception of the 2017 case.  Ex. 2 at 1-3.  It begins with Prosecutor Wyatt notifying Christiansen that she found a

OPPOSITION TO SHIFTED FEES

Page **3** of **15**

note about the concoction herein dubbed 'Burleson's Tale' in Mr. Stanley's file and, when Christiansen does not respond, Wyatt expands her inquiry to include DOC Coker. Ex. 2 at 2-3.

"**This is the first I have heard of this**," responds Coker. Ex 2 at 2. This contravenes Christiansen's sworn statement that Burleson had, in 2016, "attempted to provide the information to several persons in prison...." Dkt. # 19-2 at 8. Given the other record evidence, it is likely that Burleson skipped shopping his tale to DOC personnel and went straight to his defense counsel to work a deal. Dkt. # 19-13. This would undermine Burleson's already abysmal credibility though, so Christiansen mischaracterized it and his lawyers kept it out of discovery.

The June 9, 2016 emails demonstrate that DOC Coker checked within DOC and got responses from several DOC personnel that they too had no inkling of Burleson's Tale. Ex. 2 at 4. The internal DOC inquiry is then forwarded to Christiansen and VA Griffith with the rather telling conclusion that "**DOC I & I does not know anything about this reported behavior.**" Id. at 4. Presumably an abbreviation for Investigations and Intelligence or something similar.

On June 13, 2016, Christiansen chimes into the Burleson's Tale origination thread by soliciting the contact information of Burleson's defense attorney and the Snohomish County prosecutor who had relayed the sham to KCPAO. Ex. 2 at 7. On June 22nd at 12:39 PM, Wyatt forwards the correspondence of the Snohomish attorneys (Hiske and Rutherford) *directly to Defendant Christiansen*. Ex. 2 at 9. This firsthand possession of the Hiske/Rutherfurd plea bargaining exchange completely destroys Christiansen's claim to an innocent mind as to the part of his false Certification claiming Burleson was "not asking for anything...." Dkt. # 19-2 at 8.

The June 28, 2017 email thread also impeaches Christiansen's deposition testimony. Ex. 2 at 12. Christiansen testified that Wyatt convened the inaugural meeting and had contacted his boss, not him directly. Dkt. # 75-2 at 19 (27:5-9). He also claimed that the inaugural meeting

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

between police and prosecutors took place at KCPAO when *he himself* "reserv[ed] the SAU conference room here at Headquarters...." Id. at 27:15; *Cf.* Ex. 2 at 12.

The August 7, 2017 email (on which Christiansen is copied) goes to Mr. Stanley's claim that Christiansen was seeding the minds of trial witnesses with fear based on Burleson's Tale, without divulging the dodgy source. Ex. 2 at 17. This example reveals that the 'victims' of the new case were participating in the terror-seeding process and, as it pertains to Prosecutor/Alleged Victim Brenner, may actually have been a voice of reason. Before Brenner chimes in, Prosecutor/Alleged Victim Wyattt offers to call one of the women, Ms. Bell, and Defendant Christiansen thinks that "Sounds good." Ex. 2 at 18.

The August 10, 2017 email demonstrates that Christiansen went the extra mile to convince Wyatt, whose intelligent curiosity and perhaps skepticism is evident elsewhere in the record, that she is indeed a target of the nonexistent threats from Burleson's Tale. Ex. 2 at 19. It begins with the already-produced portion in which Christiansen marshals the 'victims' by fraudulently embellishing the credibility of Burleson ("very believable and had facts that established his truthfulness") and characterizing Temple as corroborative and then some ("more names, or at least descriptions came out"). Ex. 2 at 19-20.

In the newly produced part, Wyatt inquisitively wonders, "is there more specific information to suggest that Mr. Stanley directed threats towards me?" Ex. 2 at 19. Christiansen sells her on it: "During one of the interviews, [Burleson] said 'Prosecutors' as in plural and was confirmed, that is why you're included." Ex. 2 at 19 (to this day, no evidence of the base proposition or that it "was confirmed" has ever been adduced).

The relevant portions of Exhibits 1 and 2 were first produced by the County on June 29, 2026. Given the SPD email addresses appearing throughout the new production -those of

**LAW OFFICE OF JACKSON MILLIKAN**
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Christiansen and VA Griffith- there is zero doubt that the City possessed these records and that they were responsive to Plaintiffs' RFP.

### b. Character Facts

The misrepresentations are too numerous to address within the word limit.  This section will briefly address the most offensive.

COWART:  "Millikan has referred to me or ... my conduct as ... hysterical...."  Dkt. # 167-3 at 21 (20:24)-22 (21:1).

FACT:  Millikan drafted a brief opposing Mr. Eric Knowles' frivolous and irregular 'rebuttal' expert report and related Daubert motion, at one point describing the all-male "Defendants' hysteria over such minutia...."  Dkt. # 138-7.  *See also* Decl. Millikan.

COWART: "...referred to me or ... my conduct as ... hissy fit."  Dkt. # 167-3 at 21 (20:24)-22 (21:1).

FACT:  "Hissy fit" is not coded to gender.  *See e.g.* Ex. 3 (Nina Totenberg describing Justice Alito's impromptu bench rebuttal as "the hissy fit"); Decl. Millikan.  Hissy fit is an apt description of a long rant rehashing why a named plaintiff is a material witness who must sit for a deposition, when the entire months-long email thread was an attempt to schedule that very deposition remotely across the globe.  Ex. 4.

It was a biting remark calculated to stop a months-long campaign by which Cowart had demanded expensive and burdensome travel by either Mr. Stanley, or his counsel, calculated to sustain the pressure of compulsory travel and/or torment of having to constantly argue against her relentless and shifting demands.  Ex. 4 (Cowart was simultaneously refusing to produce Defendants Meyst, Stolt, and Borjeson).

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

COWART: "...referred to me or ... my conduct as ... tawdry." Dkt. # 167-3 at 21 (20:24)-22 (21:1).

FACT:  Millikan was responding to Cowart's above-described harassment of Mr. Stanley - demanding travel without reason.  E. 4 at 9.  Of the repeated and stalkerish decree the deposition would be in Boise, after weeks of Undersigned resisting that burden, he correctly characterized it as among Cowart's "unethical and tawdry gimmicks," which it clearly was in retrospect, given that Cowart eventually noted a remote deposition.  Ex. 4 at 2 (Cowart ceased her tawdry harassment on March 4, after persisting nonstop from January 21).

COWART: "...referred to me or my conduct as ... filthy"  Dkt. # 167-3 at 21 (20:24)-22 (21:1).

FACT:

The unclean hands doctrine proscribes equitable relief when ... and individual's misconduct has "immediate and necessary relation to the equity that he seeks." ... The doctrine might apply, for example, if a felon requests the return ... of property used in furtherance of his offense.

Henderson v. United States, 575 U.S. 622, 625 n.1 (2015) (quoting Keystone Driller Co. v. General Excavator Co., 290 U. S. 240, 245 (1933)).

Cowart was demanding records she claims were late but had already been produced and IRS documents that had been requested but never arrived in the mail (likely thanks to the 'DOGE' effect), including W-2 forms that contain the same information already provided months earlier in paystubs and whatever other records Expert Economist Berg appended to his report.  Ex. 5.  Meanwhile, Cowart (and her more ethical but ostrich-like counterpart for the County) had just filed motions for full summary judgment based on the claim that Plaintiffs lacked the very evidence both Defendants were knowingly hiding.  Dkt. # 98-1 at 14:17-15:9.  Those are, legally

OPPOSITION TO SHIFTED FEES

Page **7** of **15**

speaking, dirty filthy unclean hands forming an obscene gesture by demanding already-produced and duplicative records.

COWART:  "Millikan has repeatedly and groundlessly accused my supervising attorney, who is also a woman, of filing false declarations and committing perjury."  Dkt. # 167-3 at 22 (21:3).

FACT:  Perjury is "making material false or misleading statements while under oath." Black's Law Dictionary, 2014 for iPhone.  Ghazal Sharifi swore under penalty of perjury that Cowart could not conduct an early July 2024 deposition because her trial was going to the end of June.  Dkt. # 39.  Sharifi then swore the "parties still press to finish presentation of evidence ... by Friday June 21, 2024" when she knew close of evidence had already occurred *that very day*, June 18, 2024."  Dkt. # 43 (also falsely claiming to have announced her presence on the phone call related to that deposition).

The Court did scold Undersigned and ignore the perjury.  That does not mean Sharifi did not commit the perjury or that it was immaterial; in fact Undersigned noted that early July deposition precisely because he did not believe that any defense counsel would file a perjured declaration about the length of a high profile First Amendment trial, the length of which is posted publicly on PACER.  Dkt. ## 40, 45.

COWART:  "Millikan has not treated ... Zeldenrust in this manner."  Dkt. # 167-3 at 22 (21:8).  Cowart made this remark to argue Millikan was engaged in gender discrimination.

FACT:  Disparate treatment by circumstantial evidence cannot be proven if comparators from outside the protected class are treated the same.  Millikan, on behalf of Plaintiffs, is suing Christiansen and Ernsdorff for perjury and Borjeson for lying on an internal affairs report to cover up the perjury of the two other men.

OPPOSITION TO SHIFTED FEES

Page **8** of **15**

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

Zeldenrust never actively engaged in harassment or sewing confusion, but he did keep his head down and pretend to be clueless right up until his sudden retirement. If it makes Cowart feel any better, Undersigned did call out Zeldenrust's false claim in briefing that "Burleson was able to correctly identify Judge Ramsdell" as one of the nonexistent targets of Mr. Stanley's nonexistent threats. Dkt. # 116 at 7.

### III.  ARGUMENT

It is unclear to Plaintiffs that any rule befits a situation in which a party moves to compel production of material evidence, no relevant evidence is produced until months after the motion, the court then holds a hearing after the close of discovery and strikes the motion, then invites the party concealing the evidence to move for fees, during which time more evidence (including the smoking gun) is produced even after the hearing. Plaintiffs also find no case law with which to analyze this scenario on all fours, especially given that Defendants grounded several of their summary judgment arguments on propositions that are eviscerated by the very evidence they concealed.

Defendants' belated motion is grounded in Rule 37(a)(5)(B), which is applicable to situations in which a court "denies a motion to compel." The Order states that the "Motions are hereby **STRICKEN**" not denied, which is underscored by the invitation for Plaintiffs to explain why "withholding and/or redaction of documents by the City Defendants" is improper. Dkt. ## 150, 157.

Respectfully, and separately from the Court's fully received and understood instruction on the tonal nuances of good faith communications, Plaintiffs view the two motions as necessarily entwined and highly successful as a practical matter even if not countenanced as such. Agreeing arguendo that the posture is even appropriate for a fee-motion based on denial (as opposed to

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

'stricken' status), this analysis posits that the "substantially justified" exemption is satisfied by the Rule 37(b)(5)(A) showing that the "disclosure or requested discovery is provided after the motion is filed...."  Exs. 1 and 2; Dkt. # 158-3.

Plaintiffs further posit that other factors, including the imbalance of resources available to the largest city in the Pacific Northwest and those of a solo practitioner, constitute "circumstances [that would] make an award of expenses unjust."  Rule 37(a)(5)(B).  Because the 'good faith' issue relating to the phone call is largely subjective, it is discussed in Declaration of Millikan.

### a.  Motion was substantially justified

Though obviously not binding, Groeschel v. Benevity Int'l Inc. is as similar a posture as Plaintiffs have found in any case.  No. 2:24-cv-01686-JNW, 2025 U.S. Dist. LEXIS 142881, at *5 (W.D. Wash. July 25, 2025).  The defendants moved for summary judgment "almost six months before the dispositive motions deadline" which was "before ...[the plaintiff] ... had any realistic opportunity to pursue discovery relating to its theory of the case," while the court also found the contemporaneous motion to compel such discovery was "too vague" but substantially justified. Id. at *3-*4 (quoting Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv., 323 F.3d 767, 773 (9th Cir. 2003) (citation omitted)).

This case is much more amenable to such a holding.  Here, Plaintiffs had already made full discovery, had already prevailed on appeal, and were the somewhat 'early' summary judgment movants forced to play blind man's bluff in both their own motion and the subsequent cross-motions by the very parties withholding the critical evidence.  While not invited to brief such effects, it is retrospectively clear that the withheld evidence would have undercut several arguments made in defense motions.

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

The Groeschel court also based its ruling on a prospective component similar to this Court's invitation to demonstrate how the newly unredacted materials would have affected Plaintiffs' own summary judgment motion.  "As the Court has given Groeschel a chance to renew her motion to compel, the Court finds it would be unjust to award attorneys' fees at this time." Id. at *5.

In Spearman Corp., the court declined to shift fees where the parties had jointly disclosed that the discovery issue had been resolved a few months after the motion was filed.  Spearman Corp. Marysville Div. v. Boeing Co., No. C20-13RSM, 2020 U.S. Dist. LEXIS 162575, at *3 (W.D. Wash. Sep. 4, 2020).  The court found that the cooperative effort had mooted the motion, whereas the instant case involves Defendants' continued concealment of critical email evidence even after the scheduled close of discovery.

Finally, there is a bright line rule that fees should be shifted in the *opposite* direction, irrespective of whether "the motion is granted - ...if the...requested discovery is provided after the motion was filed...."  Rule 37(a)(5)(A).  City Defendants produced every single relevant email on or after December 18, 2025.

It was always about the emails.  Plaintiff's Counsel started the October 1, 2025 phone conference asking for the emails that he discovered were existent through a public records request.  Dkt. # 66 at 1 min 30 sec. (Defendants created and filed a deceptive transcript that begins 3 minutes and 30 seconds into the call.  Dkt. # 63-4).  Plaintiffs were owed emails in civil discovery -redacted as they may be- *not* a detour through state public records law exemptions.

During the infamous phone call, Defense Counsel (1) admitted the City had taken no action to even search, (2) imposed the prerequisite that Plaintiff's counsel first confer on non-discovery presented by a public records officer with state law redactions and, (3) demanded that

OPPOSITION TO SHIFTED FEES

Page **11** of **15**

Plaintiff's counsel select the names of complete strangers within City government who might hold the relevant evidence.   Dkt. # 63-4.

Nonetheless, Plaintiffs' Counsel waited for emails.  He waited triple the time he had pronounced in the conference agenda.  Had Defense Counsel agreed at the outset that the relevant emails would be produced in a reasonable time, the call would have remained on track or even been ended quickly because the emails were (and clearly are) the most vital evidence in this case.

Had the City produced *any* relevant emails prior to the drafting of the motion, it would not have been filed when it was, if at all.  Decl. Millikan.  Rather than produce any relevant emails, Defense Counsel codified her obstructive remarks from the conference by serving updated discovery responses that, among other shenanigans, unilaterally imposed a "12/31/2018" end date for Defendants' email search.

This despite the RFPs requiring *all* dates, and Undersigned Counsel, and the Complaint explaining that Defendants had attempted to "retry the sham case after the appeals court tossed the verdict...."  Dkt. # 1 ¶ 26 (requesting all emails from all dates is completely appropriate for a person who only encountered Defendants in two criminal cases).  Ultimately, Defendants produced documents from the other side of an apparent lacuna between the faux 2018 end date and the 2021 reversal of Mr. Stanley's conviction, but Counsel never clarified this until the hearing as obfuscation is her stock in trade.

In this connection, Plaintiffs are still mystified as to the processing of redactions wherein the City and County have both admitted to discussing privilege outside the presence of Plaintiffs' Counsel, while at the same time pretending to require all three parties to be present on a call discussing state public records exemptions.  Dkt. # 63-4 at 3-5.  Inherent in the claim that Plaintiffs' motion was unnecessary, there seems to lurk a *sub silentio* principle that if Plaintiffs

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

had only asked the County to tell the City to remove redactions -or perhaps Plaintiffs needed to ask the County to tell the state public records officer not to apply PRA exemptions- then all the emails would have been amicably produced in unredacted form post haste.

This shell game (formerly dubbed "Whack-a-Mole") is underscored by Defense Counsel's admission that she discussed the redactions (apparently for the first time?) on "December 8, 2025" with former County defense counsel, John Zeldenrust, who required that the City redact Ernsdorff's statements.  Ex. 6; *Cf.* Dkt. ## 63-4 at 3-4; 89-1.  Cowart admits also that, after the June 9, 2026 hearing, "County's attorney Amy Montgomery told me that County no longer wants to assert protection over this [work product]" which is why she then produced hundreds of relevant and unredacted emails on June 12, 2026.  Ex. 6.

 It is difficult to square this cooperation with Cowart's lamentation during the October 1, 2025 phone call that, "if John [Zeldenrust] were on the phone, then potentially he would've been able to confirm that the county's not claiming any privilege" over the documents that *nobody had even produced yet* in any form -redacted or otherwise.  Dkt. # 63-4 at 4.  It turns out that City and County attorneys can and do discuss their respective privileges without requiring undersigned solo practitioner's participation, which makes sense given that there is no rule stating that he who propounds discovery must thereafter engage in lengthy multiparty dialogue before any party lifts a finger to produce *any* responsive records.

At the hearing, Undersigned Counsel related that he feels "like the piñata game where they put the blindfold on you and spin you around; that's what happens when you get 14,000 pages after the close of discovery."  Dkt. # 167-3 at 32 (31:16) (now up to 17,451 pages).  The entire discovery process has been this confusing but, even if it costs a solo practitioner a very burdensome penalty, at least Plaintiffs now have (one would hope) all the relevant evidence.

OPPOSITION TO SHIFTED FEES

Page **13** of **15**

Weaponized confusion as part justification for a compel-motion.  This notion is not easily found in court opinions, which could be because it is rare to find a litigator so expert at sewing confusion, or because Undersigned just ain't too bright.  A district court in Kansas declined to shift fees where "discovery responses were substantially justified in instances where plaintiffs' requests were inartfully worded and confusing."  Mercado v. Arrow Truck Sales, Inc., No. 23-2052-HLT-ADM, 2024 U.S. Dist. LEXIS 65481, at *21 (D. Kan. Apr. 9, 2024).

Cowart has intentionally sewn confusion since the outset of this case in too many ways to catalogue, but some further examples are glaring.  Cowart announced during the phone call an absurd end date of "12/31/2018" (Dkt. # 63-4 at 7) for her grossly belated search for emails, memorialized it in the next discovery response (Dkt. # 68-2 at 5), then produced documents from the period beginning in 2020, creating an apparent lacuna in production, then announced at the hearing that it had all just been an illusory game.  Dkt. # 167-3 at 14 (13:6).

This is similar to the tactic of serving a discovery response feigning lack of knowledge as to the meaning of "entire file" then requiring a Rule 37 phone call to reveal that was another ruse.  Dkt. # 63-4 at 15 (14:1).  After the phone call, Cowart even inserted the term "for money" into Interrogatory 4.  Dkt. # 68-1 at 8.

Undersigned solo practitioner would be nuts to actually desire Court intervention and all the work surrounding this endeavor, but the foregoing tiny sample of the gaslighting tactics of Defense Counsel not only beckoned and necessitated the motion, it offended 28 U.S.C. § 1927.  While Plaintiffs maintain that the material evidence would never have been produced but for the motion, this case is at worst comparable to Martinez v. Easter Seals, in which

> neither party completely prevailed on this motion, and both parties bear some responsibility for this matter having been brought before the Court for resolution.  In these circumstances, an award of expenses to either party would be unjust and inappropriate under Rule 37(a)(5)(A) and (B), and the Court

OPPOSITION TO SHIFTED FEES

Page **14** of **15**

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com

declines to exercise its discretion under Rule 37(a)(5)(C) to apportion expenses between the parties.

Martinez v. Easter Seals Santa Maria El Mirador, Inc., No. 1:13-cv-0837 SWS/KK, 2014 U.S. Dist. LEXIS 200100, at *13-14 (D.N.M. Oct. 7, 2014).

## IV.  CONCLUSION

All Plaintiffs ever wanted was the evidence that Defendants withheld while claiming Plaintiffs have no evidence to defeat summary judgment.

By *s/ Jackson Millikan*
Jackson Millikan, WSBA # 47786
Attorney for Plaintiffs

By his signature above, Jakson Millikan hereby swears that this Motion contains 4,198 words exclusive of the title block, footers, and signature line in accordance with the 4,200-word limit in LCR 7(e)(4).

LAW OFFICE OF JACKSON MILLIKAN
2540 Kaiser Rd.
Olympia, WA 98502
Telephone: (360) 866-3556
Jackson@MillikanLawFirm.com