HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SLOAN STANLEY and JACINTA STANLEY,

Plaintiffs,

v.

KING COUNTY, CITY OF SEATTLE, CLIFF BORJESON, RANDE CHRISTIANSEN, GARY ERNSDORFF, NICHOLAS MEYST, and JASON STOLT,

Defendants.

Case No. 2:24-cv-00108-RAJ

ORDER

## I. INTRODUCTION

THIS MATTER comes before the Court on the Motion for Reasonable Expenses Under FRCP 37(a)(5)(B) (the "Rule 37 Motion," Dkt. # 166) of Defendants City of Seattle, Rande Christiansen, Nicolas Meyst, Jason Stolt, and Cliff Borjeson (collectively, the "City Defendants"). The Court has reviewed the Rule 37 Motion and all submissions filed in support of and in opposition thereto. Dkt. ## 166–67, 170–73. For the reasons set forth below, the Court **GRANTS** the Rule 37 Motion.

## II. BACKGROUND

On October 7, 2025, Plaintiffs filed a Motion to Compel Discovery by City Defendants (the "Motion," Dkt. # 58). The City Defendants opposed the Motion, arguing that Plaintiffs had failed to make an effort to meet and confer in good faith prior to filing the Motion. Dkt. # 62. Counsel for both Plaintiffs and the City Defendants filed audio recordings and documents memorializing the parties' October 1, 2025 meet-and-confer. Dkt. ## 63-4, 64, 66. The materials reflect that, during the telephone conference, counsel for the Plaintiffs refused to engage in negotiations regarding search terms, redactions, or Plaintiffs' discovery requests generally. Dkt. # 63-4 at 2–5, 9–11. To the contrary, Plaintiffs' counsel indicated that he had already decided to file a motion to compel, informing counsel for the City Defendants: "[n]othing you say affects my decision. This is a prerequisite to make a motion to compel." Dkt. # 63-4 at 8; *see also id.* at 2 ("[M]id-May of last year would've been the appropriate time to [run email searches]. So now we're going to go ahead and have some motion practice."), 5 ("[T]his is my conference, so I've already determined that I have sufficient information from you to make my motion."), 11 (requested exemplar documents will "be in the motion"). Plaintiffs' counsel also employed personal insults, profanity, and demeaning language toward counsel for the City Defendants. By way of example, counsel for Plaintiffs made the following comments during the conference:

- "[Y]ou don't have to continue boring me with this conversation." Dkt. # 63-4 at 2.
- "I don't have time to go digging through the fricking mess that you gave me. . . .I already did that. . . . Maybe you're right. Maybe I'm hallucinating. I doubt it." Dkt. # 63-4 at 9–10.
- "So, obviously, you're just playing games with me. So I'm not going to play games on the phone, and I'm not going to commit on the phone to whatever BS you're serving up." Dkt. # 63-4 at 11.
- "I wrote that down so I'll try to learn what the hell you're talking about after we're done with this phone call." Dkt. # 63-4 at 13.

- "[Y]ou seem highly literate and highly capable. So why are you involving me in that? Why hasn't it happened already?" Dkt. # 63-4 at 19.
- "So you want me to play Marco Polo? I want all the emails. Every single email. Do you get me? I'm done. This -- this -- this is a game I'm tired of playing." Dkt. # 63-4 at 20.

Additionally, the audio recordings of the conference submitted by counsel for Plaintiffs and the City Defendants both indicate that Plaintiffs' counsel raised his voice in a hostile manner throughout the duration of the call, and ultimately hung up the phone on counsel for the City Defendants. *See generally* Dkt. # 63-5; 66.

In their response to the Motion, the City Defendants explained to the Court that they made substantial productions and supplemental discovery responses in the weeks following Plaintiffs' filing of the Motion. Dkt. # 63-6; 63-7. On December 19, 2025, the City Defendants informed Plaintiffs that they had "completed their efforts to supplement responses to Plaintiffs' RFPs and address the issues raised in Plaintiffs' Rule 37 letter." Dkt. # 167-2. Despite these developments, Plaintiffs did not withdraw the Motion for over six months. The Court thereafter held an in-person hearing to resolve outstanding discovery disputes. During that June 9, 2026 hearing, the Court observed that it appeared that "a good faith effort was not engaged in the meet and confer" prior to the filing of the Motion. Dkt. # 152 at 5. In order to facilitate efficient adjudication of the dispute, the Court struck the Motion but offered Plaintiffs an opportunity to file a motion raising specific objections to documents withheld or redacted by the City Defendants. Dkt. # 150 at 2–3. The Court cautioned Plaintiffs that any objections to redactions "must identify and attach as an exhibit the complete set of pages produced by the City Defendants which include redactions to which Plaintiffs object." *Id.* at 2. The Court further reminded Plaintiffs that requests for *in camera* review must be supported by "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *Id.* at 3 (citing *Kee v. United States Fid. & Guar. Co.*, No. 3:24-CV-05535-TMC, 2026 WL 496785, at *3 (W.D. Wash. Feb.

23, 2026), *objections overruled sub nom. C.C., as Assignee v. United States Fid. & Guar. Co.*, No. 3:24-CV-05535-TMC, 2026 WL 1182998 (W.D. Wash. Apr. 30, 2026)). Plaintiffs' subsequent motion did not request *in camera* review or other relief as to the City Defendants, and instead sought consideration of unredacted emails as supplements to their then-pending summary judgment motion. Dkt. # 157 at 3.

The Court permitted the City Defendants to file a motion for fees and expenses incurred in responding to the Motion. Dkt. # 150 at 4–5. The instant motion followed. Dkt. # 166.

## III. LEGAL STANDARD

Under Fed. R. Civ. P. 37 (a)(5)(B), if the court grants a motion to compel or if the requested discovery is provided after the moving party files its motion, the court must require the opposing party to pay the moving party its reasonable attorneys' fees and expenses unless (1) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" (2) "the opposing party's nondisclosure, response, or objection was substantially justified;" or (3) "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). On the other hand, if the court denies the motion to compel, it must require the moving party to pay the opposing party its reasonable attorneys' fees and expenses unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

In determining the reasonableness of requested attorneys' fees, reviewing courts calculate the "lodestar" figure by multiplying "the number of hours ... reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)). The resulting figure is "presumptively reasonable," but the court may, in its discretion, apply an upward or downward adjustment to the lodestar figure based on additional factors not already subsumed in the initial lodestar calculation. *Id.* at 982

(referring to the 12 factors enumerated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). These factors, known as the "*Kerr* factors," are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.3d at 70. The Court need not consider the *Kerr* factors unless necessary to do so to support the reasonableness of the fee award. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002).

## IV. DISCUSSION

The City Defendants request a total of $10,125 in fees and expenses; this total purportedly reflects 22.75 hours of work collectively performed by three attorneys on tasks "necessitated by" the Motion, applying hourly rates of $400 - $450. Dkt. # 168 ¶¶ 11–14. Plaintiffs respond that an award of fees is not warranted because the Motion was not denied, but "stricken," with the Court offering Plaintiffs an opportunity to explain why "withholding and/or redaction of documents by the City Defendants" is improper. Dkt. # 170 at 9 (citing Dkt. ## 150, 157). Plaintiffs also appear to argue that the Court's extension of this opportunity was coextensive with a finding that the Motion, even if "vague," was "substantially justified." *Id.* at 10 (citing *Groeschel v. Benevity Int'l Inc.*, No. 2:24-CV-01686-JNW, 2025 WL 2097984, at *2 (W.D. Wash. July 25, 2025)).

However, the Court explained on the record during the June 9 hearing that its reluctance to deny the motions on the merits was prompted by judicial economy and case management concerns. The Court specifically cited the likelihood that counsel would "be back before [the] Court with an attempt to try and relitigate some of the other same exact issues" given the severity of the apparent breakdown in cooperation between counsel in

this case. Dkt. # 152 of 5. The Court was also not equipped to assess the merits of the Motion before hearing from counsel regarding the specific basis underlying the Motion, as well as progress in discovery subsequent to its filing. Given the vague and nonspecific nature of Plaintiffs' explanations regarding the basis for the Motion at the June 9 hearing, the Court had no choice but to order supplemental briefing:

> I don't think we have any choice but to have supplemental briefing, counsel, for clarity of exactly what's not been produced, in light of what has recently been produced, and so that the record is clear for the Court to make a ruling, one way or another. And again, Counsel, in any motion that you file, it has to be precise and specific as to which defendant has or has not complied with the request."

Dkt. # 152 at 38.

In its written order, the Court explicitly warned Plaintiffs of their responsibility to offer a clear and specific basis for the Motion. Dkt. # 150 at 2–3. Plaintiffs' subsequent filing made clear that the Motion was without merit, as Plaintiffs failed to articulate particularized objections and did not request any *in camera* review to assess the propriety of the City Defendants' withheld or redacted documents. Dkt. # 157 at 3. The posture of this case is therefore distinct from the *Groeschel* action, which denied fees pending review of a renewed motion to compel. *Groeschel*, 2025 WL 2097984, at *2. Here, the Court has reviewed Plaintiffs' renewed request, has denied the same, and has concluded that the Motion was not "substantially justified." Dkt. ## 157, 174.

Plaintiffs respond that "there is a bright line rule that fees should be shifted in the *opposite* direction, irrespective of whether 'the motion is granted . . . if the . . . requested discovery is provided after the motion was filed . . .'" Dkt. # 170 at 11 (citing Fed. R. Civ. P. 37(a)(5)(A)). However, this subsection of Rule 37 also provides that the Court "must not order this payment if . . . the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." Fed. R. Civ. P. 37(a)(5)(A)(1). That is precisely what occurred here: Plaintiffs' counsel openly admitted during the October 1, 2025 meet-and-confer that he had already decided to file the Motion, that the

meet-and-confer was a mere "prerequisite" to the filing of the Motion, and that he was wholly uninterested in attempting to engage in meaningful negotiations relevant to the substance of his discovery requests. Dkt. # 63-4 at 2, 5, 8, 11. This is the antithesis of a "good faith" attempt to "obtain the . . . discovery without court action." Fed. R. Civ. P. 37(a)(5)(A)(1). Such an effort may have resulted in the production of the documents and responses without the need for this Court's intervention and expenditure of resources.

Because the Motion was unsuccessful, counsel for the City Defendants are entitled to the "reasonable expenses [they] incurred in opposing" it. Fed. R. Civ. P. 37(a)(5)(B). The "reasonable hourly rate" used in the lodestar calculation "is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979 (internal quotations and citations omitted). The relevant forum in determining reasonableness is "the forum in which the district court sits." *Id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). The Court concludes that the hourly rates of $400 to $450 utilized by the City Defendants are reasonable. *See, e.g.*, *City of Burien v. Cole-Tindall*, No. 3:24-CV 00433-RAJ, 2025 WL 2083648, at *1 (W.D. Wash. Apr. 14, 2025) (finding hourly rates of $325 to $495 "reasonable in light of market rates in Seattle.")

The Court finds that the majority of the itemized summaries submitted by the City Defendants reflect a reasonable allocation of time spent on tasks required to oppose the Motion. However, the Court exercises its discretion to exclude the two hours (corresponding to $900 in expenses) spent by lead counsel's second chair to travel to and attend the June 9, 2026 hearing, as this appears to have been the second chair's only involvement in responding to the Motion. Dkt. # 168 ¶¶ 7, 13. The Court also excludes the 2.25 hours spent by the previous second chair on review and research tasks (corresponding to expenses totaling $900), as this work is apparently duplicative of work performed by lead counsel in October 2025. *Id.* ¶¶ 2, 3. Finally, the Court exercises its discretion to exclude 2 hours of work (corresponding to $900 in expenses) performed by

lead counsel in October 2025 as reflecting possible overlap in drafting efforts. *See id.* ¶ 3 (two entries on October 13 and 16 dedicated to drafting Section I of the City Defendants' opposition to the Motion; separate entries on October 13, 21, and 22 reflecting drafting of declaration in support of opposition).

Because the Court concludes that both the hourly rates and the above hours expended submitted by Plaintiff's counsel are reasonable, the Court need not consider the *Kerr* factors and declines to impose any further adjustment to the lodestar calculation. The lodestar figure is calculated by multiplying lead counsel's hourly rate of $450 by the 16.5 hours she reasonably expended on this matter, for a total of $7,425.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the City Defendants' Motion for Reasonable Expenses Under FRCP 37(a)(5)(B). Dkt. # 166. The City Defendants are awarded $7,425 in expenses, to be paid by counsel for the Plaintiffs.

Dated this 19th day of October, 2026.



The Honorable Richard A. Jones
United States District Judge